# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ESPINOSA, CANDELARIO AND ESPINOSA, YUDY, | ) ) | |
| Debtors, | ) ) | |
| AP SIDING & ROOFING COMPANY | ) ) | |
| Plaintiff-Appellant | ) ) | |
| v. | ) ) | No. 14 CV 4134 |
| BANK OF NEW YORK MELLON, | ) ) | Judge John J. Tharp, Jr. |
| Defendant-Appellee | ) ) | |

## MEMORANDUM OPINION AND ORDER

"He who seeks equity must do equity." *Manufacturers' Fin. Co. v. McKey*, 294 U.S. 442, 449 (1935). This may be an ancient maxim but, as this case illustrates, it remains timeless. Before the Court is Appellant AP Siding & Roofing ("AP") Company's appeal of the bankruptcy court's order revoking *nunc pro tunc* relief from an automatic stay. In the bankruptcy proceedings below, AP initially successfully secured an annulment order that excused its foreclosure on a creditor's property that was done in violation of an automatic stay. Mortgage Electronic Registration System ("MERS") then moved to have the annulment order set aside. Through MERS' motion, the court learned that when moving for the annulment AP had failed to inform the court that in a parallel state court proceeding MERS was seeking to set aside a default foreclosure judgment that AP had obtained in violation of the automatic stay. Because AP failed to disclose these facts, the bankruptcy court revoked its previous ruling granting AP's request for an annulment. AP moved for reconsideration—not once, but twice—and both motions were denied.

AP now appeals. Its principal argument is that because MERS had assigned its interest in the disputed property to the Bank of New York ("BONY," the appellee here) before it filed the motion to vacate the annulment, it no longer had standing. The bankruptcy court rejected the argument, reasoning that MERS' status with respect to the disputed property was irrelevant because the court's decision to revoke its annulment order was based on AP's own failure to disclose the ongoing state court proceedings. In addition to reiterating the bankruptcy court's proffered reasons for revoking the annulment order, BONY now adds that even if MERS' status was relevant that MERS had suffered an injury in fact (and thus had standing) because AP used the annulment order to secure a default judgement against it.

## BACKROUND

On November 26, 2010 debtors Candelario and Yudy Espinosa filed a Chapter 7 bankruptcy petition in the Northern District of Illinois (the "2010 bankruptcy"). Brief of Appellee, ECF No. 17, 2. The bankruptcy estate included a small property located at 5941 W. Patterson Avenue, Chicago, Illinois. The building was subject to a mortgage owned, at the time, by MERS and a mechanic's lien that AP had secured as collateral for a construction job it had completed for the Espinosas. Even though an automatic stay had been placed on the property shortly after the Espinosas filed the 2010 bankruptcy, on February 9, 2011 AP brought an action in state court to foreclose on its mechanic's lien. *Id.* Several months later, on September 6, 2011, AP obtained a default judgment of foreclosure and sale against both the Espinosas and MERS from the Circuit Court of Cook County, Illinois. *Id.*

On September 22, 2011 the Espinosas' 2010 bankruptcy petition was dismissed. *Id.* The Espinosas filed a new petition on October 6, 2011 (the "2011 bankruptcy"). AP sought relief from the automatic stay put into place after the 2011 bankruptcy, but although the 2010

bankruptcy was disclosed in the 2011 filings, it did not seek retroactive relief from the 2010 stay. *Id.* The Espinosas' 2011 bankruptcy proceeding was later dismissed on December 29, 2011. *Id.*

On February 15, 2012 AP purchased the Espinosas' property at its own foreclosure sale. On November 1, 2012, MERS, which had not previously appeared in any proceedings due to allegedly inadequate service, filed a motion to vacate the default judgment in the state court foreclosure action. AP was served with notice of the motion on November 2, 2012. In its motion MERS argued that because AP moved to foreclose on its mechanics lien in violation of the 2010 automatic stay, the state foreclosure action and resulting default judgment were void.

Shortly after MERS filed its motion to vacate, on November 19, 2012, AP filed a motion in the bankruptcy court for annulment, seeking retroactive relief from the automatic stay put in place during the pendency of the 2010 bankruptcy. AP's motion to annul the stay, however, contained no reference to MERS' pending motion to vacate in state court, and on December 18, 2012 the bankruptcy court issued an annulment order granting relief from the 2010 stay *nunc pro tunc*.

MERS soon became aware of AP's annulment order. In response, on January 2, 2013 MERS filed a motion with the bankruptcy court to vacate that annulment order. MERS argued it had never received notice of AP's motion and that AP's motion seeking retroactive relief from the 2010 stay had been filed in response to MERS motion in state court to vacate AP's default judgment, which was premised on AP's failure to obtain relief from the 2010 automatic stay. The bankruptcy court agreed with MERS, and on March 4, 2013, Judge Barnes entered an order vacating his previous order granting AP retroactive relief from the 2010 stay. The bankruptcy court found that MERS had "failed to include state court developments [the motion to vacate] directly germane to the Court's consideration, and that had the Court had all of the facts before

it, the Court may have decided differently." Order Vacating Order Granting Relief From Stay, ECF No. 17, Ex. 1, 44.

On March 11, 2013 AP filed a renewed motion for annulment. In denying AP's motion from the bench, the bankruptcy court offered the following justifications for its ruling:

> COURT: So here's the issue, and it's the same issue I had last time and it's going to be the basis of my ruling here, which was when I granted annulment the first time, I did it based on what was represented to me what was going on in state court. There was no representation in that motion that there was this pending motion for sanctions, or that a briefing schedule [for the motion to vacate the default judgment] has been set. None of that was said to me . . . annulment is an extraordinary remedy. I was willing to do it based on the uncontroverted facts that were before me on the first motion. I am not willing to do it now . . . I'm denying it actually for the lack of disclosure in the original motion . . . if you know of any reason why your request [for annulment] should not be granted, you have an obligation to inform the court of that as well.

May 13, 2013 Tr. Proceedings, ECF No. 17, Ex. 1, 67-68. Thus, the bankruptcy court reiterated that because AP had failed to notify the court of the ongoing state proceedings to vacate the default judgment, it was denying AP's request for an annulment. *Id.* at 69. The bankruptcy court then issued an order denying AP's renewed motion for annulment.

About ten months later, on March 23, 2014, AP took one final swing at obtaining retroactive relief from the 2010 automatic stay. AP filed another motion seeking relief from the bankruptcy court's previous order vacating *nunc pro tunc* relief and requesting that the court reopen the bankruptcy action. AP argued that because MERS had assigned its mortgage interest in the subject property to BONY in February 2012—months before it first sought relief in the state court foreclosure action—it had no standing to seek relief in either state court or federal bankruptcy court. Apr. 21, 2014 Tr. Proceedings, ECF No. 17, Ex. 1, 70. Thus, because the

4

bankruptcy court was made aware of the state court proceedings by a party that had no standing, it should reinstate *nunc pro tunc* relief.

In dismissing this argument, the following colloquy occurred between the bankruptcy court and AP's counsel:

> COURT: All right. Let me ask you why. Why can't you just simply go through the foreclosure process now?
>
> AP's COUNSEL: Well, Your Honor, we won't have the same priority, and we went all the way through sale . . . [a]nd my point is that the motion, both the motion to vacate the nunc pro tunc relief and the reason the nunc pro tunc relief was eventually vacated were based upon motions made by a movant who neither had standing to do those motions either in this court or in the state court. In other words, they came in and moved to vacate it, they no longer had any interest in the property. They had assigned their mortgage a year earlier. When they went into the state court to vacate the [default judgment], which was the reason you took back the nunc pro tunc relief because you didn't think I had adequately informed the court of that motion—
>
> COURT: And I still believe that. So it doesn't really matter to me who has standing … I vacated my order annulling the stay because of disclosure issues with counsel that had moved for it. Those disclosure issues haven't changed.
>
> AP's COUNSEL: Your honor, everything that MERS did in this court, including being here today, is done without standing. The cases from the Supreme Court down, as I have set forth in my brief, make it clear that standing is absolutely essential in order to seek relief from this court.
>
> COURT: All right. Counsel, I must not have been clear. So let me be clear for the last time on this. I would not have annulled the state if you had disclosed to me fully in your original motion what was going on. You failed to do that. The record indicates that clearly. So when I vacated the order annulling the stay, it was for that reason. It matters not who brought it to my attention or whether they had standing.

Apr. 21, 2014 Tr. Proceedings, ECF No. 17, 71. AP then filed a timely Notice of Appeal from the April 21 Order denying its request to reopen the bankruptcy case and for relief from the order vacating the prior annulment.

**ANALYSIS**

District Courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges entered in Chapter VII bankruptcy proceedings. 28 U.S.C. § 158(a). Because "[d]istrict courts sit as appellate courts when hearing appeals from bankruptcy courts," *Hijjawi v. Five North Wabash Condo. Ass'n*, 491 B.R. 876, 880 (N.D. Ill. 2013) (citing *In re Neis*, 723 F.2d 584, 588 (7th Cir. 1983)), the district court applies a dual standard of review that "examine[s] the bankruptcy court's determinations of law de novo and its findings fact for clear error." *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009).

In its opening brief, AP presents the following issues:

> a. Whether the Bankruptcy Court erred in failing to reopen the bankruptcy action to consider Appellant's motion for relief pursuant to Fed. R. Bankr. P. 9024.
>
> b. Whether the Bankruptcy Court erred in failing to grant Appellant's motion for relief pursuant to Fed. R. Bank. P. 9024 on the basis that the court's prior ruling revoking nunc pro tunc relief was based on a motion made by a party with no interest or standing in the subject bankruptcy.
>
> c. Whether the Bankruptcy Court erred in failing to grant Appellant's motion for relief pursuant to Fed. R. Bankr. P. 9024 on the basis that the court's prior ruling revoking nunc pro tunc relief was based upon a motion made by a party in the state court foreclosure action that had no interest or standing in the state court foreclosure.

Brief of Appellant, ECF No. 15, 3-4.

The crux of all three issues presented for review by AP is whether MERS had standing to file its motion requesting that the bankruptcy court vacate its annulment order. Part and parcel

6

with this issue is whether it ultimately mattered if MERS had standing, given that the basis of the bankruptcy court's ruling was the lack of forthrightness in AP's original motion for an annulment order—a motion that MERS had nothing to do with.

The Court agrees with the bankruptcy court and concludes that once all the relevant information was provided to the bankruptcy court, it was apparent that the equities illustrated that an annulment order was not warranted. Thus, the bankruptcy court did not abuse its discretion when it refused to reopen the bankruptcy action to rehear AP's motion for an annulment. With respect to AP's standing arguments, the Court affirms the bankruptcy court's ruling that MERS' status was irrelevant to the court's decision to revoke its order granting AP retroactive relief from the stay, because the court possessed the authority to do so on its own motion.

### A. AP's Request to Reopen the Bankruptcy Action for Reinstatement of the Court's Annulment Order

The first issue AP presents is whether the bankruptcy court abused its discretion in declining to reopen the bankruptcy action to rehear AP's motion for an annulment of the 2010 stay. Because a motion to reconsider a prior order is "an extraordinary remedy and is granted only in exceptional circumstances, a [bankruptcy] court abuses its discretion only when no reasonable person could agree with the decision." *In re Ockerlund*, No. 10 CV 5738, 2011 WL 249456, at *3 (N.D. Ill. Jan. 25, 2011) (citing *Eskridge v. Cook Cnty*. 577, F.3d 806, 809 (7th Cir. 2009)). Here the equities of the case make clear the bankruptcy court's decision was anything but an abuse of discretion.

When a debtor files for bankruptcy, a stay on all judicial and non-judicial proceedings, with certain numerated exceptions, automatically attaches to his property. 11 U.S.C. § 362(a). After the debtor files, no formal action is required because the stay becomes effective

7

immediately upon the filing of the bankruptcy petition. *Id.* Actions that are taken in violation of this stay are usually void, even if the creditor had no actual notice of the stay. *Id.* But a "bankruptcy court is a court of equity . . . and is guided by equitable doctrines and principles except insofar as they are inconsistent with the bankruptcy act." *Securities and Exch. Commn. v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 455 (1940).

In this vein, a bankruptcy court can retroactively validate a foreclosure sale under Section 362(d) of the Bankruptcy Code, as AP requested, if the party moving for relief can show "cause" for such extraordinary relief. "Cause as used in § 362(d) has no clear definition and is determined on a case-by-case basis." *Matter of Fernstrom Storage and Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (internal quotation and citation omitted). But, generally, courts will find cause for an annulment of the automatic stay if doing so is consistent with the same equitable principles that guide bankruptcy proceedings at large. *In re Lipuma*, 167 B.R. 522, 526 (Bankr. N.D. Ill. 1994) (citing *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 910 (6th Cir. 1993); *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994); *In re Calder*, 907 F.2d 953, 956 (10th Cir. 1990) (courts should apply equitable considerations when considering whether to annul a stay); *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir. 1984); *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 977 (1st Cir. 1982) (principles of equity called for annulling debtor's automatic stay)).

Before turning to those equitable considerations, as an initial matter, any argument that equity justified an annulment order is belied by AP's failure to be forthright with the bankruptcy court in seeking equitable relief. "[A] bankruptcy court is one of equity . . . [and i]t is horn-book law . . . that a person who seeks the protection of equity must do equity." *In re Thomas,* 204 F.2d 788, 794 (7th Cir. 1953). This equitable maxim is closely connected to the doctrine of "unclean hands," and a party who acts in bad faith related to the matter cannot seek equitable relief in that

same matter. *In re Cox*, 175 B.R. 266, 274 (Bankr. C.D. Ill. 1994). Although the court did not go as far as saying AP deliberately deceived the court, it apparently did consider sanctioning AP's counsel for failing to disclose the ongoing state court proceedings relating to MERS' pending motion to set aside the default judgment. May 13, 2013 Tr. Proceedings, ECF No. 17, 67. On appeal AP does not argue that it justifiably omitted that information, nor does it claim that it lacked any knowledge of MERS pending motion to set aside its default judgment.

And how could it? MERS first filed its motion to set aside the default judgment on November 1, 2012, and AP's counsel was served the next day. Only after that, on November 19, 2012, did AP file its motion with the bankruptcy court seeking an annulment. Notwithstanding that AP had been served with MERS' motion only some two weeks before, AP said nothing to the bankruptcy court about the pending motion. Thus, because AP omitted that crucial fact, the bankruptcy court was left looking at the world through AP's manufactured lens and was unable to adequately assess the totality of the relevant equities. Unaware of this crucial omission, the bankruptcy court granted AP's motion for an annulment. May 13, 2013 Tr. Proceedings, ECF No. 17, 6. But once it became apparent to the bankruptcy court that it had not been presented with all the facts germane to assessing whether an annulment order was appropriate, namely that there was another mortgage on the property that could claim to have priority over AP's mechanic's lien, it was well within the court's equitable powers to vacate the annulment order. *See* 11 U.S.C. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.")

AP's lack of forthrightness aside, once the bankruptcy court was aware of all the facts relevant to AP's request for an annulment order, it was readily apparent there was no equitable justification for reopening the bankruptcy case and reinstating the annulment order. In assessing whether to grant an annulment, courts consider a non-exhaustive list of equitable factors, with no one factor being dispositive. *See In re Wapotish*, No. 07 B 71218, 2009 WL 1916965, at *2 (Bankr. N.D. Ill. July 2, 2009) (collecting authority and identifying a non-exhaustive list of seventeen factors courts consider). But courts generally find that equity supports the granting of retroactive relief from the automatic stay whenever a creditor lacks (1) actual or constructive knowledge of the stay and (2) they would be unfairly prejudiced. *See In re Wilson*, 536 B.R. 218, 222 (Bankr. N.D. Ill. 2015). Here the record makes clear that AP had constructive notice of the 2010 bankruptcy long before it sought relief from the stay and that MERS in fact would have suffered significant prejudice had the motion been granted.

First, when AP moved for the annulment it had constructive, if not actual, knowledge of the 2010 automatic stay. Equity calls for retroactive relief from the automatic stay where the creditor had no notice of the stay. *Id.*; *In re Halas*, 194 B.R. 605, 614 (Bankr. N.D. Ill. 1996) (creditors who had knowledge of first bankruptcy case, but were never provided notice of second bankruptcy filing, received relief from automatic stay); *In re Confidential Investigative Consultants, Inc.*, 178 B.R. 739, 752 (Bankr. N.D. Ill. 1995) ("Although there is no bright line rule, the general trend has been to evaluate . . . whether the creditor had notice of the bankruptcy"); *In re Super. Equip. Mfg. Co., Inc*., 98 B.R. 417, 419 (Bankr. C.D. Ill. 1989). Conversely, if the creditor had actual or constructive notice of the automatic stay, then retroactive relief is inappropriate. *In re Wilson*, 536 B.R. at 222. Constructive notice can be provided by a properly filed public record, *In re Cutty's-Gurnee, Inc.*, 133 B.R. 934, 950 (Bankr.

N.D. Ill. 1991), and courts may take judicial notice of the contents of those records. *Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002) (bankruptcy judge properly took judicial notice of the schedules filed in the bankruptcy case).

Here, such constructive notice was readily available to AP even though it maintains it had no knowledge of the 2010 bankruptcy until November 8, 2012. Reply, ECF No. 18, 2. A year earlier, in November 2011, AP was notified of the 2011 bankruptcy and requested relief from that stay. Although the 2010 bankruptcy was disclosed in their bankruptcy petition, AP took no action with respect to the 2010 stay. AP does not dispute this claim; instead, it maintains that once it filed relief from the 2011 bankruptcy it took no further action "such as reviewing the petition or other documents in the case file" because such actions were unnecessary. Reply, ECF No. 18, 3. Yet even if AP did not read the 2011 bankruptcy petition, as it claims, they would only indicate they had no *actual* knowledge of the prior automatic stay. But because they were aware of the 2011 bankruptcy filing, and it was a reasonably obtainable public record, they at the very least had *constructive* knowledge of the 2010 bankruptcy. Thus, one of the most prominent equitable factors—knowledge of the stay—cuts against AP receiving an annulment. *See In re Wilson*, 536 B.R. at 222.

A second factor relevant to consideration of the creditor's knowledge of the automatic stay is whether prejudice would result if the court were to enforce that stay. *See id.* If annulling—or enforcing—the stay would significantly prejudice a party, bankruptcy courts, as courts of equity, are reluctant to take action. *See e.g. In re Syed*, 238 B.R. 133, 144 (Bankr. N.D. Ill. 1999) (annulment of stay was warranted because requiring creditor to reschedule foreclosure sale created unfair prejudice). AP maintains that it would suffer severe prejudice if it were not granted retroactive relief from the automatic stay because it had already foreclosed on the

11

Espinosas' property and purchased it at its own foreclosure sale. But this conduct was all carried out in violation of the 2010 stay; a stay that AP had constructive knowledge of no later than November 2011 and yet waited another year before seeking an annulment order. *In re Wapotish*, WL 1916965, at *2 (failure to seek prompt relief from automatic stay weighs against granting retroactive relief). Hence whatever prejudice AP has suffered has been the product of its own lack of diligence and inaction after receiving constructive notice of the 2010 bankruptcy. *See Lantz v. C.I.R.*, 607 F.3d 479, 483 (7th Cir. 2010) ("'equity aids the vigilant, not those who sleep on their rights'") (internal citation omitted).

On the other hand, it is apparent that MERS—or BONY, its assignee—would have suffered severe prejudice had the court reinstated the annulment of the 2010 stay. Under the Mechanic's Lien Act, AP's mechanic's lien was only entitled to priority over MERS's mortgage in an amount equal to the increase of the value of resulting from its work. 770 Ill. Comp. Stat. Ann. 60/16 (2013). Because when AP initially moved for the annulment order the bankruptcy court was unaware that another mortgage existed or that MERS was moving to set aside the state court default judgment. The bankruptcy court was therefore unable to foresee the prejudice that would result from granting AP's requested retroactive relief of the 2010 stay. As a result, AP was able to secure priority to the entire $22,000 it was owed without consideration of the MERS mortgage. Indeed, when pressed by the bankruptcy court as to why AP could not simply refile its foreclosure action since the stay had passed, AP's counsel responded because "we won't have the same priority." Apr. 21, 2014 Tr. Proceedings, ECF No. 17, Ex. 1, 71.

Accordingly, the bankruptcy court did not abuse its discretion in declining to reopen the bankruptcy action and reconsider AP's motion for an annulment order. Because AP failed to disclose all relevant information to the bankruptcy court, and because once all pertinent

information was disclosed it was apparent that an annulment was not warranted, no reasonable person could conclude otherwise.

### B. Issue of Standing

The next two issues presented on appeal by AP pertain to the issue of standing. AP argues that since MERS had assigned its interest in the Espinosas' property it lacked Article III standing. BONY argues, however, that MERS' standing was irrelevant to the court's order and that in any event, MERS—although not a party in interest—did have sufficient Article III standing to contest the annulment. BONY is right with respect to both points. The bankruptcy court's order revoking its previous annulment order had nothing to do with the MERS motion; it was based on AP's inequitable conduct with respect to *its* motion. And even if MERS' status was relevant, although no longer a real party in interest, MERS had suffered an injury in fact sufficient to satisfy Article III's standing requirements.

First, it was proper for the court to disregard MERS' status when revoking the annulment order. Bankruptcy courts can invoke their equitable powers *sua sponte*. *See* 11 U.S.C. § 105(a); *Matthews v. Rodgers*, 284 U.S. 521, 524 (1932) ("The want of equity jurisdiction, if obvious, may and should be objected to by the court of its own motion"); *In re Weatherford*, 413 B.R. 273, 288 (Bankr. D.S.C. 2009) (bankruptcy court had the power to "sua sponte take any action necessary to prevent abuse of process that would undermine the integrity of the bankruptcy system."). Thus, when the bankruptcy indicated that it "would not have annulled the stay if you had disclosed to me fully in your original motion what was going on. You failed to do that . . . *[i]t matters not who brought it to my attention or whether they had standing*" it was simply invoking its equitable authority sua sponte to prevent an abuse of process. Apr. 21, 2014 Tr. Proceedings, ECF No. 17, 74. The court's approach makes sense: AP does not argue that

13

when it originally sought the annulment order MERS status was somehow relevant. That is because it was well within the court's discretion to grant retroactive relief from the automatic stay—even *sua sponte* if need be. *In re Mataragas*, No. 96 B 14287, 1997 WL 777254, at *2 (Bankr. N.D. Ill. Dec. 18, 1997) (Court using powers "granted under § 105(a) in conjunction with § 362(d) to sua sponte annul the automatic stay."). If MERS' status was irrelevant in granting relief in the first instance, it follows that MERS status was just as irrelevant when the court revoked that same relief.[1] In attempt to make MERS' status pertinent, AP argues that the bankruptcy court would have never been made aware of the state court proceedings unless MERS had brought them to the court's attention. This disingenuous argument is little more than saying "we would have never been caught if someone had not told on us." Particularly in a bankruptcy court, where the judge is given broad authority to promote equity insofar as it is consistent with the bankruptcy laws, AP's argument is a nonstarter.

Second, even if the question of MERS' standing were germane to the bankruptcy court's ruling, AP's argument would still fall short. Although MERS was not a "real party in interest" with respect to the Espinosas' property, since it had assigned its interest in that property to BONY, AP's annulment order caused sufficient injury to MERS to confer Article III standing.

To establish standing, a party must show an injury in fact traceable to the conduct of the defendant and likely to be redressed by the relief sought. *See, e.g., Lujan v. Defs. of Wildlife*, 504

---

[1] When AP filed its third motion requesting the relief from the stay it made clear to the bankruptcy court that MERS had in fact assigned its interest in the Espinosas' property to BONY before seeking to have the annulment court vacated. Apr. 21, 2014 Tr. Proceedings, ECF No. 17, Ex. 1, 71. Although the court could have easily required that MERS substitute BONY as a party to the motion, it elected not to because MERS had nothing to with why the annulment order was vacated—it was done so because AP in filing its request for annulment had "failed to include state court developments directly germane to the Court's consideration." Order Vacating Order Granting Relief From Stay, ECF No. 17, Ex. 1, 44. Thus, MERS had nothing to do with the court's decision to revoke the annulment.

U.S. 555, 583 (1992). To be designated as the real party in interest, on the other hand, the party must simply possess the particular right to be enforced. Fed.R.Civ.P. 17(a). The distinction between the real party in interest doctrine and Article III standing is subtle and often eludes courts and litigants, but they comprise distinct doctrines nonetheless. *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014) (court indicating that standing in the bankruptcy context is "addressed sometimes in terms of standing, sometimes in terms of the real party in interest, and sometimes in terms of both."); *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008) (warning that real party in interest doctrine should not be confused with Article III standing); *Weissman v. Weener*, 12 F.3d 84, 86 (7th Cir. 1993) (noting that real party in interest doctrine and standing are similar, but distinct); *Hernandez v. Forest Preserve Dist. of Cook County, Illinois*, No. 08-CV-5731, 2010 WL 1292499, at n. 4 (N.D. Ill. Mar. 29, 2010) (stating that "there is no question that [the bankruptcy] Plaintiff has Article III standing, in that he has alleged an injury in fact traceable to the conduct of the District that is likely to be redressed by the relief sought . . . The question is whether Plaintiff is the real party in interest, meaning 'the person who possesses the right sought to be enforced.'"); 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1542 (3d ed. 1998) (Noting "it is not surprising that courts and attorneys frequently have confused the requirements for standing with those used in connection with real-party-in-interest . . . principles.").

The two doctrines serve distinct purposes. The purpose of the real party in interest doctrine is to "protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as res judicata," *id.* 1966 Advisory Committee Notes, while the doctrine of standing ensures "Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party." *Lujan,* 504

U.S. at 583 (internal citation omitted). Thus, "[i]t must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury" as a result of the defendant's conduct. *Id.* (internal citation omitted). Standing, moreover, is jurisdictional and non-waivable, while requirements of the real party in interest doctrine are non-jurisdictional and may be waived. *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010) (holding that real party in interest doctrine is non-jurisdictional and may be waived); *Tate v. Snap-On Tools Corp.*, No. 90 C 4436, 1997 WL 106275, at *4 (N.D. Ill. Feb. 11, 1997) (discussing jurisdictional distinction between real party in interest doctrine and standing).

Here, AP's putative "standing" argument is, in fact, an argument about the real party in interest. Because MERS no longer held a security interest with respect to the Espinosas' property, it was not the real party in interest in the foreclosure action. *In re Idicula*, 484 B.R. 284, 288 (Bankr. S.D.N.Y. 2013) (court holding that because the claimant had assigned its interest in the property it could not seek relief from the automatic stay); *see also In re Maisel*, 378 B.R. 19, 22 (Bankr. D. Mass. 2007) (party could not seek relief from automatic stay because it had no interest in the subject property).

That is not to say, however, that MERS did not suffer an injury in fact sufficient to give confer Article III standing. *Rawoof,* 521 F.3d at 756 (indirect injury to shareholder sufficient to confer standing even though corporation was real party in interest). MERS suffered an injury in fact because the annulment order excused AP's violation of the 2010 automatic stay and secured AP's state court default judgment against MERS. *St. Pierre v. Dyer*, 208 F.3d 394, 401 (2d Cir. 2000) (entry of default judgment against plaintiff constituted an injury of fact that is concrete, particular, and actual). This default judgment was secured by AP erroneously obtaining an annulment of the 2010 stay, and the only way that MERS could seek redress from that default

judgment was by having the bankruptcy court revoke the annulment order it erroneously granted. Thus, although MERS was no longer the real party in interest with respect to the Espinosas' property, AP's conduct had caused MERS sufficient injury to confer it Article III standing. The standing inquiry turns on whether MERS suffered an injury in fact traceable to the conduct of the defendant and likely to be redressed by the relief sought. *Lujan*, 504 U.S. at 560 (1992). An "injury in fact" refers to the invasion of a legally-protected interest which is both concrete and personal to the injured person and is actual or imminent rather than hypothetical or speculative. *Id.* Entry of a default judgment plainly satisfies that condition, and so with respect to MERS, the standing requirements are easily satisfied.

* * *

In conclusion, the bankruptcy court did not abuse its discretion in declining to reopen the bankruptcy action to reconsider AP's motion for relief from the annulment order. It was also not error for the court to conclude that the issue of whether MERS had standing was irrelevant to its ruling revoking the annulment order. Accordingly, the bankruptcy court's April 21, 2014 order is affirmed.

Date: March 28, 2016

John J. Tharp, Jr.
United States District Judge

17